SAMBARN ASSOCIATES, INC., Respondent, v. MANHATTAN & BRONX COUNCILS, INC., Appellant, Impleaded with Another, Defendant.

Appeal by the defendant Manhattan & Bronx Councils, Inc., from a judgment of the Supreme Court, entered in the New York county clerk's office on June 21, 1940, upon a verdict in favor of the plaintiff for $9,750 directed by the court, after trial at Trial Term without a jury.

Judgment affirmed, with costs. No opinion.

Present — O'Malley, Townley, Glennon, Untermyer and Cohn, JJ.; Cohn, J., dissents and votes to reverse the judgment and dismiss the complaint in opinion, in which Glennon, J., concurs.

COHN, J. (dissenting). The action was brought by respondent as assignee of Samuel S. Toback, a licensed real estate broker, and Myer C. Rosenthal, a licensed real estate salesman, to recover from appellant commissions of $7,500 upon an alleged sale of hotel equipment used in appellant's Knights of Columbus Hotel for the sum of $75,000.

In March, 1934, when an action to foreclose the first mortgage on appellant's hotel was pending, Toback and Rosenthal were employed by appellant to negotiate a lease of the hotel. The brokerage contract between respondent's assignors and appellant contained a provision that appellant would pay a commission of ten per cent of the purchase price " if the sale of any equipment is consummated between the parties."

In May, 1935, a lease of the hotel was executed between the tenant obtained by respondent's assignors and appellant. The tenant named in the lease was the 200 West 48th Street Corporation, which was the nominée of one Abraham Dreier. During the negotiations which led to the making of the lease, appellant made known the fact that because of its financial difficulties it was obliged to borrow $15,000. Apparently the moneys which appellant was deriving from the lease were insufficient to prevent the foreclosure.

The proposed lessee, Abraham Dreier, was apprised of the fact that the loan was required and he agreed to accommodate appellant, provided he was given security. Since appellant was a domestic corporation organized under the Benevolent Orders Law, its attorneys had the mistaken notion that it was not empowered to mortgage its personal property. Accordingly, the transaction was conducted in the following manner: In June, 1935, or about a month after the lease was closed, appellant executed and delivered to Dreier's corporate nominee, Eighth Ave. Hotel Corp., a bill of sale of the hotel furniture, absolute on its face. The consideration stated in the bill of sale was $75,000. Simultaneously with the execution and delivery of the bill of sale there was delivered by Dreier's corporation to a son of Dreier a chattel mortgage in the sum of $15,000 covering the furniture embraced in the bill of sale. The son paid $15,000 to Dreier's corporation, which turned it over to appellant. There was also executed and delivered by Dreier's corporation to appellant a chattel mortgage for $60,000 which was subordinate in lien to the aforementioned chattel mortgage of $15,000.

Three and one-half years after the completion of this transaction and on November 4, 1938, respondent brought this action to recover the commission of ten per cent for effecting the sale of appellant's hotel furniture to the said Eighth Ave. Hotel Corp., as evidenced by the bill of sale referred to. Plaintiff's claim is based on the instrument which on its face purports to be an absolute bill of sale.

The first defense set up in appellant's answer alleges that despite the form of the documents the transaction was actually a loan and not a sale; that a true sale was never contemplated and was never consummated. A second affirmative defense of general release was also asserted by appellant. It is unnecessary to consider the second defense as it appears from the record that the particular claim now asserted by respondent was not embraced in the general release upon which the defense was based.

Upon the trial, Rosenthal and Toback, plaintiff's assignors, each testified in behalf of respondent. During Rosenthal's examination the bill of sale was received in evidence. He was questioned almost exclusively concerning the release and was not asked about the sale of the furniture. Toback, however, gave testimony which indicates clearly that notwithstanding the mechanics of the transaction a loan was contemplated rather than a sale. He did state that Dreier intended to purchase the furniture at a later time if he decided to renew the lease or to purchase the hotel.

Defendant McCarthy, who at the time of these occurrences was the president of appellant, testified that the agreement between appellant and Dreier was one for a loan and not a sale of the furniture. He also explained the form of the arrangement of the loan.

The alleged purchaser, Abraham Dreier, was also called as a witness by defendant. After testifying that appellant required a loan and sought to borrow $15,000 from him, he stated in answer to the question whether the $15,000 was loaned, that it was a sale. Immediately after, however, Dreier contradicted that statement and showed almost conclusively that it was a loan rather than a sale. He testified that the chattel mortgage of $15,000 was paid by appellant and that his son, the chattel mortgagee, executed a satisfaction. Dreier also said that the furniture went back to appellant but that he got it again " a couple of years later " and that the furniture now belongs to him.

The fact that appellant paid the chattel mortgage of $15,000 can lead to no other conclusion than that it was still the owner of the furniture. No explanation has been offered as to why appellant should satisfy a lien against Dreier's property. If the transaction were a sale, as plaintiff contends, appellant could not possibly have been liable for the indebtedness which the chattel mortgage secured, as the chattel mortgagor was Dreier's corporation.

The record does not show why the furniture went back to appellant. The only reasonable inference that can be drawn from the evidence, however, is that the transaction was a loan and not a sale and that upon appellant's payment of the loan the security was returned.

It may well be that Dreier purchased the property a couple of years after the furniture went back to the appellant. Just how he ultimately obtained the furniture and for what price is not shown. Obviously, Dreier's acquisition of the furniture was not effected pursuant to the bill of sale on which respondent's cause of action is grounded.

The fact that the bill of sale is absolute on its face is not controlling. At law or in equity a bill of sale may be shown to have been given by way of security and not as an outright transfer of title. (*Chase National Bank* v. *Tover*, 245 App. Div. 615, 621; affd., 271 N. Y. 518.) The intention of the parties must be gathered from all the surrounding circumstances and may be established by oral testimony. Here the overwhelming weight of the credible evidence shows that the bill of sale was executed merely as part of a plan to effect a loan. Hence a judgment in favor of plaintiff was not warranted.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

Glennon, J., concurs.